## THE P. J. T. CO. NO. 7.

## THE NATHAN HALE.

(District Court, S. D. New York. November 16, 1909.)

COLLISION (§ 95*)—TOWS MEETING—NAVIGATING WITHOUT LOOKOUT.

Tug No. 7, proceeding to the eastward in Long Island Sound, at night, with five barges in tow, *held* solely in fault for a collision near Hart's Island with the barge Rhode Island, in tow of the tug Nathan Hale on a hawser, proceeding eastward, for navigating on the wrong side of the channel without a lookout.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 95.*]

In Admiralty. Suit for collision by the Philadelphia & Reading Railway Company, as owner of the barge Rhode Island, against the tug P. J. T. Co. No. 7 and the tug Nathan Hale. Decree against tug No. 7.

Armstrong, Brown & Boland, for libellant.

James J. Macklin, for the P. J. T. Co. No. 7.

Harrington, Perkins & Englar, for the Nathan Hale.

ADAMS, District Judge. This action was brought by the Philadelphia & Reading Railway Company against the tugs P. J. T. Co. No. 7 and the Nathan Hale to recover the damages suffered by reason of a collision between the No. 7 and the light barge Rhode Island in tow on a hawser of the Nathan Hale. The No. 7 had a tow of five barges on a long hawser, and was proceeding east through Long Island Sound. The Nathan Hale with a tow of four barges, the Meade, Ray, Rhode Island and Rupert, was proceeding through the sound to the westward. The No. 7 struck, near Hart's Island, inflicting damages to the Rhode Island, estimated at $3,000, and causing loss of personal effects of her master amounting, it is claimed, to $26.85.

The libel alleges that when the tow was off the island, with all lights properly set and burning, the collision occurred by the No. 7 striking the Rhode Island on the port side. The libellant further states that the collision was not caused by any fault on the part of the Rhode Island, was due to the negligence of No. 7, in that: (1) She did not have a competent master in charge; (2) she did not have a sufficient lookout; (3) she saw, or ought to have seen, the barge, and having abundant room to navigate to the south, continued on a course which resulted in the collision; (4) she failed to port her wheel and pass the Hale and barge to port, and (5) she did not stop and reverse in time.

The libel further alleges that the Hale was also in fault in that: (1) She failed to port her wheel and change her course sufficiently to enable her barges in following her to keep out of the way of the No. 7; (2) having the Rhode Island in tow she failed to prevent a collision, and (3) she failed to maintain a proper lookout.

The No. 7 in her answer, after some admissions and denials, alleges:

"Eighth. And, for further answer to said libel; and upon information and belief claimant alleges: That at about 10:30 p. m. of the first day of Novem-

ber, 1906, the said Steamtug P. J. T. Co. No. 7 having in tow five barges in tandem fashion astern, was proceeding through Lond Island Sound, it being about slack water at the time, and barges being laden with coal, and said Steamtug proceeding very slowly therewith, she being bound at the time for various points East, and while said tug was about abreast of the upper end of City Island, it was observed that a steamer bound down the said sound, showing both her side lights, well on the starboard bow of the said Steamtug No. 7; whereupon a signal of two whistles was sounded by said Steamtug No. 7 to which no reply was made, and shortly thereafter another signal of two whistles was sounded by the said Steamtug No. 7, which also remained unanswered, and that a little while thereafter the said Steamtug which afterwards proved to be the Nathan Hale shut out her green light and showed only her red light whereupon alarm whistles were sounded by the said Steamtug No. 7 and her engines slowed and said alarm whistles were again sounded by said tug to which no response was made, whereupon the engines of said Steamtug No. 7 were stopped, but that said Steamtug Nathan Hale came on, continuing to show her red light, and passed said Steamtug No. 7 on her port side, but that her tow which consisted of four barges was trailing across the channel, and said Barge Rhode Island which was the third barge in tow of the Steamtug Nathan Hale came into collision with the stem of the said Steamtug No. 7, the port bow of said barge striking the said tug.

Claimant also alleges upon information and belief that the said Barge Rhode Island had no lights burning at or previous to said collision, nor did the barge astern of the Rhode Island have any lights set or burning, and that there was nobody attending the wheels of either of said last mentioned barges. That the wind was blowing very violently at and previous to the collision from the North Northwest. Said collision occurred about abreast of Hewlett's Point.

Ninth. Claimant of said Steamtug No. 7 alleges as charges of fault against said Steamtug Nathan Hale

(1) That owing to the force and direction of the wind and her barges being light, that she should have passed on the starboard side of said Steamtug No. 7 and her tow. (2) In that she should have answered the signals of said Steamtug No. 7. (3) In that she was proceeding at a high rate of speed and did nothing to prevent said collision. (4) In that she permitted the said Barge Rhode Island together with the barge astern to be towed without having any lights burning, as required by law. (5) In that she permitted her said tow to trail across the channel.

As to the Barge Rhode Island claimant avers upon information and belief,

(1) That she did not keep a proper lookout, (2) that no one was attending to her steering, and (3) in not having proper lights set and burning."

The Hale in her answer, after some admissions and denials, alleges:

"Seventh. That at about 10:30 p. m. the 1st day of November, 1906, the steamtug Nathan Hale, having in tow four barges tandem fashion, was proceeding through Long Island Sound bound to the westward. Both the tug and all the barges had all regulation lights properly set and burning brightly. When said tug was about off Hart Island, she made out a long distance ahead both side lights and staff-lights of a tug which afterwards proved to be the P. J. T. No. 7 bound to the eastward. The weather was clear. Immediately upon making out No. 7, Nathan Hale blew one whistle and ported her helm to pass port to port in accordance with the rule. No. 7 blew no whistles and gave no answering signal whatever, but the tugs continued on and passed each other a substantial distance apart, there being apparently no danger of collision. After passing abreast of the Nathan Hale, however, No. 7 negligently and carelessly brought herself into collision with the barge Rhode Island, doing the damage complained of.

Eighth. That said collision and consequent damage were not caused nor contributed to by any fault or neglect on the part of the Nathan Hale or those in charge of her, but were caused wholly by and through the fault, neglect and

want of care on the part of the steamtug P. J. T. No. 7 and barge Rhode Island in the following, among other respects:

As to No. 7—

1. In that she did not have a competent master in command. 2. In that she did not maintain a sufficient lookout. 3. In that she saw or ought to have seen the barge Rhode Island and, having abundant room to navigate to the southward, continued on a course which resulted in the collision herein. 4. In that she failed to port her wheel sufficiently to pass the Nathan Hale and her barges port to port as required by the rule and that she did not stop or change her course in time to avoid a collision.

As to Rhode Island—

1. In that she did not keep a proper lookout. 2. In that her helmsman was incompetent or inattentive to his duties."

The testimony of the different parties, in a general way, sustains their allegations.

The facts appear to be that the tugs were approaching each other head and head on the northerly side of the channel. The No. 7 was proceeding without a lookout. She at first endeavored, by signals of two blasts, to secure the Hale's consent to pass starboard to starboard. Failing that she kept a port to port course and passed the Hale and her first and second barges but struck the Rhode Island a severe blow. Whether this was brought about by a change of course to the port by the No. 7 or by the position of the tow of the Hale angling across the No. 7's bow, is not clear, but in either case the No. 7 was plainly in fault because she was navigating on the wrong side of the channel and collided with a properly lighted barge, which she should have seen and avoided. It is quite probable that the Hale's barges were more to the southward than she was. She had shortly before ported her wheel and gone to the starboard. This would naturally leave her barges somewhat to the southward, but not much, as they were on short hawsers, and it may be that the barges were also forced over to the southward slightly by the prevailing wind. That situation, however, would scarcely account for a change of the No. 7's red light at first visible to the barge, to her green, which she showed just before the collision. She must have changed to her port to have brought that about. But whatever the facts may be in this connection, I think the No. 7's plain faults in navigating without a lookout and in being on the wrong side of the channel, sufficiently account for the collision.

Decree for the libellant against the No. 7, with an order of reference. The libel against the Hale is dismissed.